UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00467-PAB-KLM

BWP MEDIA USA INC. d/b/a/ Pacific Coast News and
NATIONAL PHOTO GROUP, LLC

        Plaintiffs,

v.

CLARITY DIGITAL GROUP, LLC

        Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Clarity Digital Group, LLC, n/k/a AXS Digital Media Group, d/b/a

Examiner.com (collectively "AXS Digital"), pursuant to Fed. R. Civ. P. 56(b), and

D.C.COLO.LCivR 56.1, respectfully moves for summary judgment on all of Plaintiffs' claims,

on grounds that AXS Digital is entitled, as a matter of law, to immunity from such claims under

the safe harbor provision of the Digital Millennium Copyright Act ("DMCA").  This motion is

premised on the Declarations of Lucy Suzanne Austin and Deborah Eileen Shinbein, the exhibits

attached thereto, and on the arguments and authorities herein.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to address the Plaintiffs' pleaded claims for copyright

infringement pursuant to 28 U.S.C. § 1331.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

1.      AXS Digital owns and operates the website, www.examiner.com.  Decl. of L.S. Austin ("Austin Decl.") ¶ 3.  AXS Digital provides a platform through which it enables independent third parties ("Examiners") to contribute information to the Examiner.com website related to a specific topic.  *Id.* ¶¶ 3, 4, 6.

2.      AXS Digital staff review applications from such potential independent contributors only to confirm that the applicant appears to have some writing abilities, is somewhat knowledgeable about the topic on which (s)he proposes to contribute, and appears to be reasonably qualified to create the type of content AXS Digital wishes to feature on Examiner.com.  *Id.* ¶ 5.

3.      If accepted, the Examiner must enter into an "Examiners Independent Contractor Agreement and License" (the "Examiners Agreement") prior to being granted the ability to post content on Examiner.com.  *Id.* ¶ 8, and Ex. 2.  The Examiners Agreement states that "You must have permission from the owner/copyright holder of any content before including it on your Web Page, unless it was provided by Examiner.com."  *Id.*  Ex. 2 at 2 ¶ 4) a).  The Examiners Agreement also requires all Examiners to comply with the Editorial Requirements, which are expressly incorporated into the agreement.  *Id.* Ex. 2 at 2 ¶ 4).  The Editorial Requirements make it clear, again, that Examiners are *not* permitted to post any third-party content to Examiner.com without the prior permission of the copyright owner.  *Id.*:

> Plagiarism and Copyright:  All content posted to our site must respect the intellectual property rights of the owner.  **Do not include any copyrighted material on our site** (including text, **photos**, video, audio, or anything else) **without the permission of the owner**, and be sure to provide attribution to the source where applicable (remember, merely providing attribution is not the same as obtaining written permission from the third party to use the materials in the

first place).  You may link to the original materials but **you may not copy the original (or a copy of the original) and post it on Examiner.com *unless you have written permission from the owner.*  You also may not post any content that infringes any** patent, trademark, trade secret, **copyright or other proprietary rights of any party.**  Repeat infringers will be terminated as Examiners in appropriate circumstance.

*Id.*, Ex. 3 at 2-3 ¶ 6) (emphases added).

4.      Once approved by AXS Digital staff to post to Examiner.com on a specific topic, that Examiner is given access to a platform on Examiner.com through which he or she may post content on that topic as frequently or infrequently as he/she wishes to do so.  *Id.* ¶ 6.

5.      Once the Examiner is approved and signs the contract by which he or she commits to abide by AXS Digital's Terms of Use, each Examiner alone determines the content of the articles, photographs or video he or she may choose to post directly to Examiner.com.  *Id.* ¶¶ 6, 7.

6.      No one on the staff of AXS Digital pre-screened, edited, or approved any of the content at issue that was posted to Examiner.com by the independent contributor Examiners prior to it being posted by them.  *Id.* ¶¶ 6, 9.

7.      AXS Digital provides all Examiners with unlimited and free access to a photo library it has licensed from Getty Images to facilitate their posting photographs to accompany their postings.  *Id.* ¶ 10, Ex. 4.  AXS Digital repeatedly reminds the Examiners of this photo library, and encourages them to make use of it in posting articles to Examiner.com.  *Id.* ¶ 11, Ex. 5.

8.      AXS Digital also provides an online training module to Examiners that instructs them they must not post any third-party photographs without obtaining prior written permission from the copyright owner.  *Id.* ¶ 12.

3

9.      AXS Digital does not derive any revenues that are directly attributable to any of the Plaintiffs' photographs posted on Examiner.com.  *Id.* ¶ 14.

10.      At all times relevant to this litigation, AXS Digital has had a Designated Agent to Receive Notification of Claimed Infringement on file (and available to the public) at the U.S. Copyright Office.  Decl. of D. Shinbein ("Shinbein Decl.") ¶ 5 & Ex. 1; Austin Decl. ¶ 15.  In addition, at all times relevant to this action, Examiner.com has included on its website the physical address and e-mail address of its Designated Agent.  Shinbein Decl. ¶ 6.

11.      On or about July 9, 2013, the then-General Counsel for AXS Digital received an unsigned letter from counsel for Plaintiffs BWP Media USA Inc., d/b/a Pacific Coast News and National Photo Group, LLC.  *See* Shinbein Decl. ¶ 8.  The letter asserted that certain photographs appearing on the Examiner.com website were in violation of Plaintiffs' copyrighted material. *See id.*, Ex. 2.

12.      AXS Digital responded to Plaintiffs' letter on July 24, 2013, notifying Plaintiffs that Examiner.com had promptly removed all of the photographs identified in Plaintiffs' letter from the Examiner.com website.  *Id.* ¶ 11, Ex. 3.  That letter also noted that the "articles and photographs posted on Examiner.com by various independent third party contributors" are "written/created, selected and posted by the Examiners, rather than by Examiner.com," and as such AXS Digital was not aware of any of these photographs being posted on Examiner.com until receipt of Plaintiffs' letter.  *Id.*  On July 25, 2013, Plaintiffs' counsel acknowledged he had received the above referenced response from AXS Digital. *Id.* ¶ 12, Ex. 4

13.      AXS Digital received no other communication from Plaintiffs until being served with the instant Complaint on February 25, 2014.  Austin Decl. ¶ 17.  Prior to the filing of the

Complaint, no one at AXS Digital received a proper DMCA take-down notice for the photographs identified in exhibit 1 to the Complaint.  Austin Decl. ¶ 17.

14.    On March 3, 2014, the former General Counsel for AXS Digital responded to Plaintiffs by letter, notifying them that all of the photographs identified in the filed Complaint had been removed from the Examiner.com website on February 27, 2014.  Shinbein Decl. ¶ 14, Ex. 5.  AXS Digital explained, again, that it was entitled to immunity under the DMCA, and requested that Plaintiffs dismiss their lawsuit with prejudice.  *Id.*

15.    All of the photographs that serve as the basis for Plaintiffs' pleaded copyright infringement claims were posted directly to the Examiner.com website by the independent third party Examiners, without any prior discussion, review, or approval by AXS Digital.  Austin Decl. ¶¶ 6, 9.

16.    AXS Digital maintains a list of Examiners who have been subject to complaints for posting copyrighted material without permission of the copyright owner ("repeat infringer list").  Shinbein Decl. ¶ 16.  Any person who posts information to Examiner.com who is the subject of three such complaints, under that policy is subject to having his or her authorization to post material to Examiner.com permanently revoked.  *Id.*

17.    AXS Digital takes no steps to interfere with any third party technical measures designed to protect copyrights.  Austin Decl. ¶ 13.  In providing a tool by which content can be posted by third parties to Examiner.com, AXS Digital does not remove or block any protective measures.  *Id.*

**ARGUMENT**

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the materials in the record, including pleadings, the discovery and disclosure materials, and any affidavits show "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Trust Co. of Kan. ex rel. Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* As demonstrated below, numerous courts have granted summary judgment to internet service providers, like AXS Digital, under the safe harbor immunity provided by the DMCA.

### II.   AXS DIGITAL IS ENTITLED TO IMMUNITY BY THE DMCA AS A MATTER OF LAW

Congress enacted the DMCA in 1998 "to update domestic copyright law for the digital age." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 26 (2d Cir. 2012). Title II of the DMCA, codified at 17 U.S.C. § 512, seeks to "preserve[ ] strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements that take place in

the digital networked environment." S. REP. NO. 105-190, at 20 (1998); H.R. REP. NO. 105-551(II), at 49 (1998).  Congress recognized that "[i]n the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability." S. REP. NO. 105-190, at 8.  The DMCA "places the burden on *the copyright owner* to monitor the internet for potentially infringing [uses]." *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 916 (C.D. Cal. 2003) (emphasis added) (quoting H. REP. NO. 105-551(II) for the notion that "a service provider need not monitor its service or affirmatively seek facts indicating infringing activity"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 749 (S.D.N.Y. 2012) (a website operator "has no duty to police its website for infringements" (title case removed)).  "[B]y limiting the liability of service providers, the DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand." *Capitol Records, LLC v. Vimeo, LLC*, --- F. Supp. 2d ----, 2013 WL 5272932, at *5 (S.D.N.Y.) (quoting S. REP. NO. 105-190, at 8), *amended by* --- F. Supp. 2d ----, 2013 WL 6869648 (S.D.N.Y. 2013).

Accordingly, the DMCA provides a "safe harbor" from copyright infringement liability for service providers who can meet certain threshold requirements.  *See* 17 U.S.C. § 512.[1]  If the service provider satisfies these certain criteria, it is immune from *all* claims for copyright infringement that occur "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider."  17 U.S.C. § 512(c)(1).  "[A] finding of safe harbor application necessarily protects a [service provider]

---

[1]  For the Court's convenience, a courtesy copy of 17 U.S.C. § 512, is appended to this Motion.

defendant from *all* affirmative claims for monetary relief." *Capitol Records, LLC*, 2013 WL 5272932, at *6 (emphasis added) (citing *Viacom Int'l, Inc.*, 676 F.3d at 41). Of course, a copyright owner may still pursue all appropriate relief, under the Copyright Act, by filing claims against the individuals responsible for posting the allegedly infringing copies (all of whose identities, here, were publicly posted on Examiner.com).

### A.       AXS Digital Satisfies Section 512(c)'s Three Threshold Requirements.

To qualify for protection under any of the safe harbors, a party must first establish that it meets three threshold criteria. *Viacom, Int'l, Inc.*, 676 F.3d at 27. The party: "(1) must be a 'service provider' as defined by the statute; (2) must have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and (3) must not interfere with standard technical measures used by copyright owners to identify or protect copyrighted works." *Wolk*, 840 F.Supp.2d at 743. Under the undisputed facts set forth above, AXS Digital is entitled to safe harbor protection.

### i.       AXS Digital Is a Service Provider

The DMCA defines "service provider," in pertinent part, as "a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). This definition has been held to include a broad variety of Internet sites that publish or host user-generated content. *See, e.g.*, *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081, 1087 (C.D. Cal. 2008) (video sharing service is a service provider); *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) (Internet-based music sharing service is a service provider); *Hendrickson*, 298 F. Supp. 2d at 915 (Amazon.com a service provider); *Obodai v. Demand Media, Inc.*, No. 11 Civ. 2503 (PKC), 2012 WL 2189740, at *3 (S.D.N.Y.

June 13, 2012) (website that publishes its own content in addition to hosting and sharing users'

content is a service provider); *Wolk*, 840 F. Supp. 2d at 744 ("Because Photobucket offers a site

that hosts and allows online sharing of photos and videos at the direction of users, Photobucket,

like YouTube.com or Veoh.com, qualifies as a 'service provider' under § 512(k)(1)(B)."). By

operating its website Examiner.com, AXS Digital is "a provider of online services" for purposes

of the statute. Like the defendants in *Wolk*, *Viacom*, and others, the Examiner.com website

permits third-party users to share content (including photos and videos) online, and thus it falls

within the broad definition of a "service provider" under section 512(k)(1)(B).

### ii.   AXS Digital Has Adopted and Reasonably Implemented a Termination Policy Against Repeat Infringers

The second threshold criterion requires AXS Digital to demonstrate that it has adopted

and reasonably implemented a policy for the termination of users who are repeat infringers. *See*

17 U.S.C. § 512(i)(1)(A). AXS Digital indisputably satisfies this requirement. AXS Digital's

Terms of Use, located at http://www.examiner.com/Terms_of_Use.html prominently states that:

> [P]ursuant to the DMCA, it is our policy to terminate use of our Site by repeat
> infringers in appropriate circumstances (including Examiners or other users who
> have posted Content to our Site). You agree that the Examiner.com Parties will
> have no liability to you or any third party with regard to such termination.

Austin Decl. ¶ 8 & Ex. 1 ¶ 16. All Examiners are also provided notice of this policy in the

Examiners Independent Contractor Agreement and License. *Id.* Ex. 2. Furthermore, AXS

Digital has reasonably implemented its repeat infringer policy. *See* SUMF ¶ 16; *see also Wolk*,

840 F. Supp. 2d at 744 ("having adopted, informed users of and reasonably implemented a policy

of terminating users who repeatedly infringe copyrights," the defendant fulfilled the

requirements of § 512(i)(1)); *Viacom Int'l, Inc.*, 718 F. Supp. 2d at 528 (same); *Obodai*, 2012 WL 2189740, at *4-5 (same).

### iii. AXS Digital Does Not Interfere with Copyright Owners' Standard Technical Measures

Finally, AXS Digital also meets the third threshold requirement pursuant to section 512(i)(1)(B), which requires a service provider to "not interfere with standard technical measures."[2] No claim is made in the Complaint alleging that Examiner.com interferes with "standard technical measures," and this is simply not an issue with regard to Examiner.com. *See* SUMF ¶ 17.

### B. AXS Digital Satisfies All Four Statutory Conditions to Invoke Immunity Under the DMCA

Once a service provider satisfies these threshold criteria above, it must then establish that it also satisfies additional conditions for entitlement to the DMCA's safe harbor protection, which are delineated in 17 U.S.C. § 512(c)(1). *First*, the service provider must demonstrate that it does not have actual knowledge that material stored on its website is infringing *or* an awareness of "facts or circumstances from which infringing activity is apparent." *Id.* § 512(c)(1)(A)(i)-(ii). Alternatively, the service provider must show that upon obtaining knowledge or awareness of infringing activity it expeditiously removed or disabled access to the problematic material. *Id.* § 512(c)(1)(A)(iii). *Second*, the service provider must show that it

---

[2] Standard technical measures refer to a narrow group of "measures that are used by copyright owners to identify or protect copyrighted works and (A) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process; (B) are available to any person on reasonable and nondiscriminatory terms; and (C) do not impose substantial costs on service providers or substantial burdens on their systems or networks." 17 U.S.C. § 512(i)(2).

"does not receive a financial benefit directly attributable to the infringing activity" *if* the service provider has "the right and ability to control such activity." *Id.* § 512(c)(1)(B). ***Third***, the service provider must "designate[ ] an agent to receive notifications of claimed infringement" (commonly known as "takedown notices") from copyright holders and provide notice, both on its website and in the U.S. Copyright Office, of the contact information for that designated agent. *Id.* § 512(c)(2). ***Fourth***, the service provider must show that it responded expeditiously to remove the material that is the subject of infringing activity upon receiving notification of the claimed infringement in the manner described in section 512(c)(3). *Id.* § 512(c)(1)(C). As demonstrated below, AXS Digital satisfies all four of these conditions.

### i. AXS Digital Did Not Have Actual Knowledge of the Infringing Activity nor Awareness of Facts and Circumstances from Which Infringing Activity Was Apparent

Because a service provider is not required (or expected) to monitor and review all of the postings to its website by third parties, a service provider's duty to remove the allegedly infringing content is triggered only upon receipt of proper notice from the copyright owner or its authorized agent. *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1089 (C.D. Cal. 2001). AXS Digital has never received proper notice from Plaintiffs, under the DMCA, that particular photographs were being used without their permission. Under section 512(c)(3), the written notification, which must be provided to the service provider's designated agent, must include "substantially" the following six elements:

(i) a physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed;

(ii) identification of the copyrighted work claimed to have been infringed;

(iii) identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material;

(iv) information reasonably sufficient to permit the service provider to contact the complaining party;

(v) a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and

(vi) a statement that the information in the notification is accurate, *and under penalty of perjury*, that the complaining party is authorized to act on behalf of the copyright owner.

17 U.S.C. § 512(c)(3) (emphasis added).

A notification from a copyright owner that fails to comply substantially with section 512(c)(3) "shall not be considered under [the first prong of the safe harbor test] in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent." *Id.* § 512(c)(3)(B)(i).

The July 9, 2013 letter that Plaintiffs' counsel sent to AXS Digital cannot, as a matter of law, establish that AXS Digital had actual or constructive knowledge that particular photos were infringing:  the letter did not include "a physical or electronic signature" by anyone; nor did it include a statement "under penalty of perjury" attesting to the fact "that the complaining party is authorized to act on behalf of the owner" of the copyrights, and that the information in the "notification" was accurate.  *Id.* § 512(c)(3)(A)(vi).  *See Hendrickson*, 165 F. Supp. at 1089.  In addition, the letter did not include a statement that Plaintiffs have "a good faith belief that the use of the material in the manner complained of is not authorized."  17 U.S.C. § 512(c)(3)(A)(v). *See Hendrickson*, 165 F. Supp. 2d at 1089-90 (finding "complete failure" to include these latter

two elements renders Plaintiff's notification of claimed infringement deficient under

§ 512(c)(3)); *see also UMG Recordings, Inc. v. Shelter Capital P'ners LLC*, 718 F.3d 1006,

1024-25 (9th Cir. 2013) (because e-mail sent by CEO of Disney Company identifying infringing

material did not comply with section 512(c)(3)'s requirements for a DMCA take-down notice, it

could not be considered as a basis to find Veoh had actual knowledge or "red flags" awareness of

the infringement); *Perfect10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1112-13 (9th Cir. 2007)

(service provider has no duty to remove allegedly infringing material "if the complainant is

unwilling to state under penalty of perjury that he is an authorized representative of the copyright

owner, and that he has a good faith belief that the material is unlicensed"); *id.* at 1117 (because

plaintiff's communications to defendant did not constitute notice in substantial compliance with

§ 512(c)(3), defendant did not have awareness of allegedly infringing material necessary to

trigger its duty to remove such material).

Plaintiffs' instant Complaint, served on AXS Digital *after* it had been filed in this Court,

was the first notification AXS Digital received concerning two additional photographs (and 55

alleged infringing uses) that were not mentioned in Mr. Sanders' July 9, 2013 unsigned letter.

The Complaint, like the earlier unsigned letter from Plaintiff's counsel, also lacks the required

elements above (e.g., statement under penalty of perjury, etc.), and was filed in this Court instead

of being sent to AXS Digital's designated agent in compliance with the DMCA take down

provisions. *See* SUMF ¶ 13. Because Plaintiff failed to comply substantially with section

512(c)(3)'s notification requirement, AXS Digital did not have a duty to "expeditiously to

remove, or disable access to, the material that is claimed to be infringing or to be the subject of

infringing activity." *See* 17 U.S.C. § 512(c)(1)(C).

Nevertheless, despite having no such duty, AXS Digital *did* expeditiously take down all of the photographs from Examiner.com that were identified in Plaintiffs' Complaint.  *See* SUMF ¶¶ 12, 14.  Accordingly, AXS Digital fully satisfies the requirements of 17 U.S.C. § 512(c)(1).

  **ii. AXS Digital Does Not Receive a Financial Benefit Directly Attributable to the Infringing Activity, in a Case Where AXS Digital Has the Right and Ability to Control the Infringing Activity**

 To satisfy the second prong of the test, AXS Digital must show that it "does not receive a financial benefit *directly attributable* to the infringing activity, *in a case in which the service provider has the right and ability to control such activity.*"  17 U.S.C. § 512(c)(1)(B) (emphases added).  Because the undisputed facts establish that AXS Digital does not have the right and ability to control the infringing activity, the Court need not evaluate the financial benefit element of this prong.  *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1110 (W.D. Wash. 2004) (no need for court to consider issue of direct financial benefit when claimant of safe harbor did not have right and ability to control infringing conduct), *overruled on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612 (9th Cir. 2010).[3]

 It is firmly established that a website operator's right to remove content from the site does *not* constitute "right and ability to control" the infringing content, necessary to trigger section 512(c)(2).  *See, e.g.*, *Hendrickson*, 165 F. Supp. 2d at 1093 (noting that the "'right and ability to control' the infringing activity, as the concept is used in the DMCA, cannot simply

---

  [3]  Even if AXS Digital did have the right and ability to control infringing content, which it does not, under the undisputed material facts, AXS Digital does *not* receive a financial benefit "directly attributable to the infringing activity."  *See* SUMF ¶ 9; *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 748 (S.D.N.Y. 2012) (no evidence of directly attributable financial benefit where "[t]he defendants' profits are derived from the service they provide, not a particular infringement.").

mean the ability of a service provider to remove or block access to materials posted on its

website or stored in its system.  To hold otherwise would defeat the purpose of the DMCA and

render the statute internally inconsistent."); *Corbis Corp.*, 351 F. Supp. 2d at 1099 (same).

"Instead, such a right and ability to control must take the form of prescreening content, rendering

extensive advice to users regarding content and editing user content."  *Wolk*, 840 F. Supp. 2d at

748 (citation omitted).  As the undisputed evidence demonstrates, *see* SUMF ¶¶ 6,15, AXS

Digital does not engage in any prescreening or pre-publication control of the content posted by

independent contractor Examiners, and given the sheer volume of information posted to its site

daily by more than 10,000 of these independent third parties, "it is unlikely that this kind of

prescreening is even feasible."  *Wolk*, 840 F. Supp. 2d at 748.  Therefore, the limitation on the

"safe harbor" provided in 17 U.S.C. § 512(c)(1)(B) does not apply to AXS Digital.

### iii.  AXS Digital Has Designated an Agent to Receive Notifications of Claimed Infringements

The undisputed material facts demonstrate that Examiner.com provides public notice of

the name, address, phone number, and electronic mail address of its designated agent for receipt

of "take down notices" under the DMCA.  *See* SUMF ¶ 10.  And, this same information

regarding AXS Digital's Designated Agent is also on file, and available to the public, at the U.S.

Copyright Office.  *Id.*

### iv.  Upon (Improper) Notification of Claimed Infringement, AXS Digital Expeditiously Removed the Allegedly Infringing Material

As discussed above, AXS Digital had no obligation to respond to the notice of claimed

infringement or to remove, or disable access to, the material because the notice Plaintiffs

provided did not substantially comply with the requirements of section512(c)(3).  Thus, the third

prong of the safe harbor provision that requires that a service provider must act "expeditiously to remove, or disable access to, the material," is not applicable here.  Nevertheless, the undisputed material facts show that AXS Digital did in fact "expeditiously" remove the content identified in Plaintiffs' defective notice.  *See* SUMF ¶¶ 12, 14.

### v.  The DMCA Bars All of Plaintiffs' Claims for Copyright Infringement

Because AXS Digital has established that it satisfies all of the conditions for entitlement to the safe harbor immunity under section 512(c), AXS Digital is entitled to summary judgment in its favor on all of the copyright claims.  *See Wolk*, 840 F. Supp. 2d at 749 ("Because Photobucket is afforded the protection of the DMCA's 'safe harbor' provision, . . . [contributory and vicarious] infringement claims are also dismissed."); *Viacom Int'l, Inc.*, 718 F. Supp. 2d at 529 (DMCA safe harbor provision provides immunity "against all of plaintiff's claims for direct and secondary infringement."); *UMG Recordings, Inc.*, 718 F.3d at 1028 (DMCA safe harbor "protect[s] qualifying service providers from liability for all monetary relief for direct, vicarious and contributory infringement." (emphasis removed) (citation and internal quotation marks omitted)).[4]

---

[4]  Even if AXS Digital had not established, beyond any material factual dispute, that it is entitled to the "safe harbor" immunity of 17 U.S.C. § 512(c), the undisputed material facts also preclude Plaintiffs from establishing the elements of their claims for contributory or vicarious infringement.  *See Wolk*, 840 F. Supp. 2d at 750-51.  Accordingly, AXS Digital is also entitled to summary judgment on these claims on that alternative ground.

III.    **UNDER THE UNDISPUTED MATERIAL FACTS, PLAINTIFF CANNOT PREVAIL ON ITS CLAIM FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT**

As demonstrated above, because it is entitled to the "safe harbor" provided by the DMCA, AXS Digital is immune from *all* of Plaintiffs' copyright infringement claims (including direct, contributory, and vicarious copyright infringement) related to the photographs posted by third parties.

In addition, Plaintiffs cannot prevail on their claim for inducement of copyright infringement as a matter of law.  The Supreme Court has articulated the "inducement rule" as follows:  "One who distributes a device *with the object of promoting its use* to infringe copyright, as shown by clear expression or other *affirmative steps taken to foster infringement*, is liable for the resulting acts of infringement by third parties."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (emphases added).  Accordingly, a claim for inducement of copyright infringement has four elements:  "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir.), *cert dismissed*, 134 S. Ct. 624 (2013).  Ordinary acts "incident to product distribution, such as offering customers technical support or product updates" do not support liability.  *Grokster, Ltd.*, 545 U.S. at 937.  Instead, the inducement doctrine "premises liability on *purposeful, culpable expression and conduct*, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise."  *Id.* (emphasis added).

Notably, in their Complaint, in support of this claim, Plaintiffs allege only that:

Defendant(s) have induced and continue to induce infringement by, for example, providing technology on the Websites to download and/or forward an image to

> such social media providers such as Facebook, Instagram, and Twitter and/or
> failing to block or diminish access to infringing material even though there are
> technological means to do so that are known to Defendant.

Compl. ¶ 42.  Reviewing virtually identical allegations brought by one of the Plaintiffs here, in

*National Photo Group, LLC v. Allvoices, Inc.*, No. C-13-03627 JSC, 2014 WL 280391, at *7

(N.D. Cal. Jan. 24, 2014), the Court found that "Plaintiff fails to explain why the ability to use

social media to share news stories featuring the allegedly infringing photos—in other words,

'ordinary acts incident to' Defendant's operation of its website, *Grokster[, Ltd.]*, 545 U.S. at

937—constitutes an improper object."  Thus, that court granted the defendant's motion to

dismiss National Photo Group's claim for inducement of copyright infringement.  *Id.*

Here, the undisputed evidence shows that AXS Digital has not taken any steps

deliberately or intentionally to foster or encourage infringement.  Quite the opposite:  AXS

Digital has taken significant steps to strongly *discourage* third parties from infringing copyrights,

including the expeditious removal of infringing content and the barring of repeat infringers from

its website.  *See* SUMF ¶¶ 3, 7, & 16.  Indeed, Examiner.com's Terms of Use contains the

following unambiguous and explicit language:

> You agree that you will not post to the Site, or use the Site to transmit or make
> available any Content that . . . infringes any intellectual property rights of any
> party, including but not limited to any . . . copyright or other proprietary rights.

Austin Decl. ¶ 8, Ex. 1 ¶ 6.  Because AXS Digital takes no affirmative steps to promote or

encourage copyright infringement, but instead has actively taken proactive steps expressly to

*discourage* infringement by third parties who are authorized to post material to Examiner.com,

AXS Digital is entitled to summary judgment on Plaintiffs' inducement of copyright

infringement claim.

## **CONCLUSION**

For the foregoing reasons, AXS Digital respectfully requests this Court grant its Motion for Summary Judgment, and dismiss this Complaint in its entirety with prejudice.

Respectfully filed this 15th day of May, 2014.

By ___*s/*___ ___*Steven D. Zasnberg*___
            Steven D. Zansberg
            Thomas B. Kelley
            Christopher P. Beall
LEVINE SULLIVAN KOCH & SCHULZ, LLP

Attorneys for Clarity Digital Group, LLC n/k/a
AXS Digital Media Group, LLC d/b/a/
Examiner.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 15th day of May, 2014, I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** on the following counsel of record through the CM/ECF system:

Craig B. Sanders, Esq.
SANDERS LAW, PLLC
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Phone: (516) 203-7600 Ext. 1251

*s/      Marla Kelley*
Marla Kelley, Paralegal